**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

LYNN M. DAVIS,
　　　　　Appellant,

　　　　v.

SOCIAL SECURITY
　　ADMINISTRATION,
　　　　　Agency.

DOCKET NUMBER
SF-0432-12-0763-M-1

DATE: May 3, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Keith Goffney, Esquire, Los Angeles, California, for the appellant.

Carolyn Beth Chen, Esquire, San Francisco, California, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1　　This case is before the Board after the U.S. District Court for the Central District of California granted the parties' joint request to remand the case for further consideration of the Board's dismissal of the appellant's petition for review on timeliness grounds and/or consideration on the merits. For the

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

following reasons, we FIND that the appellant's petition for review of the August 19, 2013 initial decision affirming her removal was timely filed, VACATE our prior decision in this appeal, *Davis v. Social Security Administration*, MSPB Docket No. SF-0432-12-0763-I-1, Final Order (Sept. 29, 2014), and DENY the petition on the merits.[2] Except as expressly MODIFIED by this Final Order to incorporate the standards set out in the Board's decision in *Savage v. Department of the Army*, 122 M.S.P.R. 612 (2015), address the appellant's argument that she was denied a reasonable opportunity to improve because she was stressed as a result of her mother's terminal illness and death, and find that the agency met its burden of showing that the appellant's unacceptable performance in some components of two of her critical elements warranted an unacceptable rating in the elements as a whole, we AFFIRM the initial decision sustaining the appellant's removal.

## BACKGROUND

¶2        In an August 19, 2013 initial decision, the administrative judge affirmed the appellant's removal for unacceptable performance under 5 U.S.C. chapter 43. MSPB Docket No. SF-0432-12-0763-I-1, Initial Appeal File (IAF), Tab 49, Initial Decision (ID) at 30. The appellant filed a petition for review, which the Board previously dismissed as untimely filed. *Davis v. Social Security Administration*, MSPB Docket No. SF-0432-12-0763-I-1, Final Order (Sept. 29, 2014). The

---

[2] Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review.

appellant filed an appeal of the Board's decision with the U.S. Court of Appeals for the Federal Circuit. MSPB Docket No. SF-0432-12-0763-L-1, Litigation File (LF), Tab 1. The case was transferred to the U.S. District Court for the Central District of California, which, at the request of the parties, remanded the case to the Board for further consideration of its dismissal of the petition for review on timeliness grounds and/or consideration of the merits. LF, Tab 11; MSPB Docket No. SF-0432-12-0763-M-1, Tab 2. We have re-examined the record and find that the appellant's petition for review was timely filed based on the appellant's counsel's declaration under penalty of perjury that the petition was submitted to Federal Express on January 27, 2014, the deadline granted by the Board. Petition for Review (PFR) File, Tab 8, Tab 12 at 3; *see* 5 C.F.R. § 1201.4(*l*) (providing that the date of filing by commercial delivery is the date the document was delivered to the commercial delivery service). We therefore consider the appellant's petition for review on its merits.

¶3      The appellant was employed as a GS-6 Legal Assistant/Case Technician in the agency's Office of Disability Adjudication and Review until the agency removed her for unacceptable performance. IAF, Tab 5, Volume (Vol.) 5 at 3 of 167. In approximately January 2011, the appellant's supervisor began informally addressing her performance deficiencies. *Id.*, Vol. 2 at 130. From March 25 through April 29, 2011, he placed her on an informal pre-performance assessment plan to review her work, provide additional training, and bring her work up to standards. IAF, Tab 5, Vol. 2 at 130, Tab 31 at 31. From May 19 to June 19, 2011, the appellant's supervisor placed her on a performance assistance plan (PA), and from June 30 to November 15, 2011, he placed her on an opportunity to perform successfully (OPS) plan.[3] IAF, Tab 5, Vol. 2 at 130-34, 137-48, Vol. 5

---

[3] The agency's performance assessment and communication system involves first placing a poorly performing employee on a 30-day PA and, if the employee's performance does not improve, then placing the employee on an OPS plan for a period of 120 days. IAF, Tab 5, Vol. 5, Subtab 2h at 8-10.

at 106 of 167. On May 18, 2012, after determining that the appellant's performance was unacceptable in the three critical elements of participation, demonstrates job knowledge, and achieves business results, the appellant's supervisor issued her a notice of proposed removal. IAF, Tab 5, Vol. 5 at 36-55 of 167. After affording the appellant an opportunity to respond, the agency removed the appellant, effective August 10, 2012. *Id.* at 3-27 of 167.

¶4    The appellant timely appealed her removal to the Board and asserted that she was removed in retaliation for her prior equal employment opportunity (EEO) activity.[4] IAF, Tab 1 at 5, Tab 31 at 4. After holding the appellant's requested hearing, the administrative judge issued an initial decision affirming the agency's removal action based on the appellant's unacceptable performance in all three critical elements. ID at 13-27. The administrative judge also found that the appellant failed to prove her affirmative defense of retaliation for EEO activity. ID at 28-30.

¶5    The appellant has filed a petition for review in which she asserts that the administrative judge erred in finding that the agency afforded her a reasonable opportunity to improve and that the agency proved that her performance was unacceptable.[5] PFR File, Tab 10 at 16-32. The appellant also asserts that the administrative judge erred in his analysis of her affirmative defense. *Id.* at 33-35.

---

[4] The appellant also appealed the agency's denial of her within-grade increase (WIGI) during the OPS. IAF, Tab 1 at 2. The administrative judge found that the agency's denial of the WIGI was reasonable because the parties had stipulated that the pertinent collective bargaining agreement prohibits an employee from receiving a WIGI if, as here, she is on an OPS. ID at 4 n.1. The appellant does not challenge this finding on review, and we discern no reason to disturb the administrative judge's finding.

[5] Attached to her petition, the appellant submits 100 pages of exhibits, which appear to be largely from the record below. PFR File, Tab 10 at 37-136. Evidence that is already a part of the record is not new. *Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980). To the extent that these documents are not part of the record below, we have not considered them because the appellant has not established that they were not previously available despite her due diligence. *See Avansino v. U.S. Postal Service*, 3 M.S.P.R. 211, 214 (1980).

The agency has responded to the appellant's petition.  PFR File, Tab 17.  The appellant has filed a reply.[6]  PFR File, Tab 24.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶6        In a performance-based action taken under chapter 43, an agency must establish the following by substantial evidence:[7]  (1) the Office of Personnel Management approved its performance appraisal system; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(b)(1); (4) the agency warned the appellant of the inadequacies of her performance during the appraisal period and gave her a reasonable opportunity to improve; and (5) the appellant's performance remained unacceptable in at least one critical element.  *White v. Department of Veterans Affairs*, 120 M.S.P.R. 405, ¶ 5 (2013).[8]

---

[6] The agency filed its response on April 21, 2014, but the appellant did not file her reply until June 2, 2014.  PFR File, Tabs 17, 24.  A reply to a response to a petition for review must be filed within 10 days after the date of service of the response to the petition for review.  5 C.F.R. § 1201.114(e).  The date of service by mail is determined by the postmark date.  5 C.F.R. § 1201.4(j), (*l*).  The agency's response, served on the appellant via U.S. mail, was initially misaddressed, and on May 5, 2014, the agency contacted the appellant's attorney to inform him that it would re-serve its response via U.S. mail.  PFR File, Tab 21.  The record does not reflect the postmark date, but the appellant's attorney contends that he received the agency's response on May 15, 2014.  PFR File, Tab 22 at 2, Tab 25 at 4.  On May 27, 2014, the appellant filed a motion for an extension of time to file her reply due to the delay in receiving the agency's response, which was denied.  PFR File, Tabs 22-23.  Subsequently, the appellant filed a motion to accept her reply as timely.  PFR File, Tab 25.  Under the particular circumstances presented, we have considered the appellant's reply in reaching our decision in this matter.  However, we find that the appellant's reply, which largely restates the arguments in her petition, does not affect the outcome.

[7] Substantial evidence is the "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  5 C.F.R. § 1201.4(p).

[8] The appellant does not dispute on review the administrative judge's findings regarding the first three requirements.   Accordingly, we do not further address these criteria here.

<u>The administrative judge properly found that the appellant was afforded a reasonable opportunity to improve.</u>

¶7      On review, the appellant contends that the administrative judge erred in finding that the agency afforded her a reasonable opportunity to improve for several reasons.[9]  First, she asserts that, by failing to extend the OPS by 4 days to account for her absences, the agency failed to comply with its personnel policies, which require an OPS plan to last for a period of 120 days.  PFR File, Tab 10 at 17-18.  In support of her argument, the appellant submits, for the first time on review, time and attendance documentation.  *Id.* at 51-57.  As stated, *supra* n.5, we decline to consider such evidence, which predates the close of record below and has not been shown to have been previously unavailable.  *Avansino*, 3 M.S.P.R. at 214.  In any event, the record reflects that the agency provided the appellant an adequate opportunity to demonstrate acceptable performance over the course of approximately 5½ months.[10]  IAF, Tab 5, Vol. 2 at 130-34, 137-48,

---

[9] We decline to consider the appellant's argument raised for the first time on review that she was not informed as to what was required to demonstrate acceptable performance because the benchmarks provided to her in the OPS plan were too broadly worded and were not linked to particular critical elements.  PFR File, Tab 10 at 31.  She has not shown that this new argument is based on previously unavailable evidence.  *See Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980).

[10] To the extent the appellant, who is represented by the same counsel both below and on review, is attempting to raise an affirmative defense of harmful procedural error based on the agency's failure to afford her a 120-day OPS, exclusive of any absences, we decline to consider it because she has provided no explanation for her failure to raise such a claim below.  *See Arndt v. Department of Transportation*, 16 M.S.P.R. 221, 225 (1983) (stating that the Board will not review claims of affirmative defenses raised for the first time on review if they are not supported by any new evidence that was unavailable before the record closed below); *Banks*, 4 M.S.P.R. at 271 (declining to consider a third claim of harmful procedural error submitted for the first time on review where the appellant presented no new evidence that was not previously available when the record closed that would justify consideration of the issue).  We note that the appellant attempted to raise a claim that the agency failed to consider extenuating circumstances, including her medical condition during the OPS.  IAF, Tab 31 at 6.  The administrative judge, however, construed this as a claim that the agency failed to meet the elements of its performance-based action, not a claim of harmful error.  IAF, Tab 33 at 4 n.1.  Even if this could have been construed as a claim of harmful error, it is a

Vol. 5 at 106 of 167; *see, e.g.*, *Lee v. Environmental Protection Agency*, 115 M.S.P.R. 533, ¶ 33 (2010) (finding a 60-day performance improvement plan satisfied the agency's obligation to provide the appellant a reasonable opportunity to improve her performance); *Melnick v. Department of Housing & Urban Development*, 42 M.S.P.R. 93, 101 (1989) (finding a 30-day performance improvement plan was reasonable under the circumstances), *aff'd*, 899 F.2d 1228 (Fed. Cir. 1990) (Table).

¶8    The appellant also reiterates her testimony that her performance was negatively affected during the OPS due to stress and constant worry as a result of her mother's terminal illness and death.  PFR File, Tab 10 at 19.  The initial decision does not expressly address the appellant's testimony on this issue; however, it is undisputed that the OPS was extended 16 days to accommodate the appellant's absences from September 13-28, 2011, due to the death of her mother. IAF, Tab 5, Vol. 5 at 106 of 167; ID at 12; PFR File, Tab 10 at 17.  Although we realize the appellant was in grief, she has not alleged that she suffered from any disabling medical condition that required accommodation from the agency. Absent a disability, the appellant's assertions regarding her mental state do not provide a basis for finding that she was denied an adequate opportunity to improve her performance. *See Thompson v. Department of the Navy*, 84 F. App'x 61, 63 (Fed. Cir. 2003).[11]  Thus, even considering such assertions, we find that the agency established by substantial evidence that it afforded the appellant a reasonable opportunity to improve.

¶9    Next, the appellant reiterates her arguments from below that the agency denied her requests for training in electronic business processes (eBP), assigned

separate and distinct claim from the one the appellant now attempts to raise for the first time on review.

[11] The Board may choose to follow nonprecedential decisions of the Federal Circuit if, as here, it finds the reasoning persuasive. *E.g.*, *Erlendson v. Department of Justice*, 121 M.S.P.R. 441, ¶ 6 n.2 (2014).

her an ineffective mentor, and afforded her ineffective one-on-one training from her supervisor, which constituted harassment under the guise of training. PFR File, Tab 10 at 26-27. The administrative judge, however, considered such arguments and found them unavailing. He found that, in addition to assigning the appellant a mentor, two lead case technicians also were assigned to provide her training. ID at 11. He further found that the appellant was provided a video on demand regarding eBP and credited the testimony of the appellant's second-level supervisor that the appellant received more training than anyone else. ID at 11, 26. Finally, he found unavailing the appellant's contentions that her supervisor was harassing her instead of training her. ID at 10. We find that the appellant's arguments on review constitute mere disagreement with the administrative judge's explained findings, which are supported by the record, and they do not provide a basis for reversal. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings where she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions); *see also Broughton v. Department of Health & Human Services*, 33 M.S.P.R. 357, 359 (1987) (same).

¶10    Finally, the appellant reiterates her argument from below that her supervisor was predisposed to removing her and had been transferred to the office to harass her and "systematically build a case to fire her." PFR File, Tab 10 at 28. She also contends that her first-level supervisor intended for her to fail the OPS. She points to testimony of a former coworker, who was also supervised by the same first-level supervisor, which she characterizes as establishing that her first-level supervisor yelled at and disparaged her publicly, was overly demanding, treated her poorly, and belittled her to the point of tears. *Id.*

¶11    Based on our review of the coworker's testimony, it focused primarily on her own interactions with the supervisor, her alleged forced resignation, her EEO complaint, and her beliefs that the supervisor created a hostile work environment and discriminated against older women in the office. Hearing Transcript (HT),

Vol. 2 at 448-59. The appellant has not raised affirmative defenses of age or sex discrimination.[12] As to her observations of the appellant, the coworker testified that her cubicle was near the appellant's cubicle and she overheard the appellant's supervisor yelling at the appellant because he had trained her on certain things repeatedly, but she still made the same mistakes. *Id.* at 460-62. She also testified that she felt bad for the appellant and saw her almost in tears on at least one occasion. *Id.* at 464. We discern no error by the administrative judge in failing to mention this testimony, which we find of insufficient weight to affect the outcome of the case. *See Marques v. Department of Health & Human Services*, 22 M.S.P.R. 129, 132 (1984) (stating that the administrative judge's failure to mention all of the evidence of record does not mean that she did not consider it in reaching her decision), *aff'd*, 776 F.2d 1062 (Fed. Cir. 1985) (Table).

¶12    Moreover, the initial decision reflects that the administrative judge considered and rejected the appellant's argument that her supervisor was predisposed to removing her. Specifically, he credited the testimony of the appellant's supervisors that the appellant's first-level supervisor was transferred to the office because he had requested an assignment closer to his home and did not know anyone at the office when he arrived. ID at 10. The administrative judge also credited testimony of the appellant's first-level supervisor that he reviewed all of his employees' past performance evaluations and saw that problems had been noted regarding the appellant's performance, he himself had noticed some of the same deficiencies in her work "almost immediately," and early on, one of the administrative law judges expressed concerns to him about the appellant's performance. ID at 10. Finally, the administrative judge credited

---

[12] The appellant attempted to raise an affirmative defense of age discrimination during the week of the hearing, but the administrative judge found such a claim to be untimely because she had not raised it in her prehearing submissions. IAF, Tab 47. The appellant does not challenge this ruling on review, and thus we see no reason to disturb the administrative judge's determination that the claim was untimely raised. The appellant did not raise an affirmative defense of sex discrimination. IAF, Tabs 31, 33.

testimony of the appellant's second-level supervisor that the appellant's performance difficulties had been noted long before the PA and OPS were instituted and found that the record supported such a conclusion.  ID at 26.

¶13     Accordingly, we agree with the administrative judge that the agency afforded the appellant a reasonable opportunity to improve.

The administrative judge properly found that the agency proved that the appellant's performance was unacceptable.

¶14     We have considered the appellant's arguments on review and find that none of them are of sufficient weight to overturn the administrative judge's finding that her performance remained unacceptable in at least one critical element.  We agree with the administrative judge that the agency met its burden of proving by substantial evidence that the appellant's performance was unacceptable in the critical element of demonstrates job knowledge, which required the appellant to learn new material and apply it accurately while using appropriate technology and automation tools as well as to provide clear, accurate oral and written information and to complete accurate work products.  ID at 16-20.  We also agree with the administrative judge that the agency met its burden of proving the appellant's performance was unacceptable in the critical element of achieves business results, which required her to complete work assignments timely or as scheduled.[13]  ID at 20-25.

---

[13] We acknowledge that, as the appellant argues on review, PFR File, Tab 10 at 22, many of the examples cited by the agency in support of the appellant's unacceptable performance in the critical element of participation are also cited in support of her unacceptable performance in the critical elements of demonstrates job knowledge and achieves business results.  IAF, Tab 5, Vol. 5 at 11-22 of 167.  However, to support its removal under chapter 43, the agency need only prove the appellant's performance was unacceptable in a single critical element.  5 U.S.C. §§ 4301(3), 4303(a); *Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 6 (2013); *Thompson v. Department of the Navy*, 89 M.S.P.R. 188, ¶ 5 (2001).  Because we find that the agency proved that the appellant's performance was unacceptable in the critical elements of demonstrates job knowledge and achieves business results, we need not address whether the agency proved that her performance was unacceptable in the critical element of participation via independent evidence or whether instances of poor performance can be used to find

¶15    The OPS identified the appellant's performance deficiencies, including her inability to accurately and timely perform the following tasks:  encrypt a compact disc without assistance, update matters in the case processing and management system (CPMS), request updated records from sources and follow up using a daily to-do list, close-out scheduled hearings in CPMS and e-view, add new documents to the exhibit list, close cases in mail status, and create dismissals.  IAF, Tab 5, Vol. 2 at 145-47 of 167.  The administrative judge found that the record reflected numerous incidents during the OPS in which the appellant failed to perform such tasks accurately and/or timely.  ID at 13-25.  The administrative judge also credited testimony of the appellant's mentor during the OPS and another lead technician that the appellant closed about half of her cases with errors, repeatedly made the same mistakes, and could not perform her job duties despite having been given half of the normal caseload of a case technician during the OPS.  ID at 27.

¶16    Numerous emails during the OPS period corroborate the appellant's inability to accurately and/or timely perform such duties and reflect that often such duties were instead completed by the appellant's assigned mentor or reassigned to another employee.  IAF, Tab 5, Vols. 3-4, 6, 8.  Further, as the administrative judge noted, the appellant's supervisor discussed such errors with her during the OPS and memorialized their discussions in his weekly discussion memos.  ID at 20, 25; IAF, Tab 5, Vol. 1 at 80-138 of 167.  Thus, we find that the agency established that the appellant's performance in the critical elements of demonstrates job knowledge and achieves business results remained unacceptable during the OPS period.

¶17    On review, the appellant points out that the agency only found that she failed to meet some, not all, of the performance standards within each critical element and asserts that it was an error for the agency not to discuss her

an employee's performance unacceptable under more than one critical element. *See Towne*, [120 M.S.P.R. 239](#), ¶ 29 n.12.

performance in the remaining performance standards. PFR File, Tab 10 at 31-32. Where, as here, an appellant's performance was unacceptable on one or more, but not all, components of a critical element, the agency must show by substantial evidence that the appellant's performance warranted an unacceptable rating on the element as a whole. *See Lee*, 115 M.S.P.R. 533, ¶ 36. The evidence the agency may submit to satisfy its burden of proof on this point includes evidence that the employee knew or should have known the significance of the subelements at issue and evidence showing the importance of the subelements in relation to the duties and responsibilities with which the critical element as a whole is concerned. *Id.*

¶18    The administrative judge did not address whether the agency met its burden in this regard. Addressing it now, we find that, regarding the critical elements of demonstrates job knowledge and achieves business results, the agency provided substantial evidence that the appellant was or should have been aware of the significance of the subelements at issue. The record reflects that during the PA and OPS, the appellant was reminded of the importance of using technology and automation tools, i.e., eBP processes, to complete accurate work products in a timely manner. The PA discussed her difficulty applying eBP processes timely and correctly, which was necessary to complete the fundamental skills for the case technician position. IAF, Tab 5, Vol. 2 at 132. It also informed her of her difficulty closing cases timely and accurately. *Id.* at 133. During the PA, the appellant's supervisor reiterated to her the importance of closing cases in a timely manner and double-checking her work to prevent incomplete or incorrect work product. *Id.* at 138, 140. The appellant's weekly performance discussions during the OPS also reflect that she was repeatedly informed of the importance of timely and accurately completing her work to prevent delaying claimants' due process. IAF, Tab 5, Vol. 1 at 116, 118, 121-22, 138, 154, 157 of 167. Thus, we find that the administrative judge did not err in finding that the agency established by substantial evidence that the appellant's performance as a whole was unsatisfactory in critical elements 3 and 4.

¶19     On review, the appellant asserts that the administrative judge failed to consider her testimony regarding each example of her alleged deficient performance, which she contends "formed a complete exculpation."  PFR File, Tab 10 at 20.  The administrative judge, however, considered the appellant's testimony and found that it amounted to a variety of arguments, including that she caught the mistakes herself, disagreed that her work was untimely or that she was responsible for performing a task, made inadvertent mistakes or errors, disagreed with her supervisor as to how or when something should have been done, or disagreed with her supervisor's assessment of her performance.  ID at 27.  The administrative judge's failure to discuss each individual incident does not mean that he did not consider them in reaching his decision.  *See Marques*, 22 M.S.P.R. at 132.

¶20     The appellant also asserts that the agency failed to meet its burden because it failed to rebut her testimony disagreeing with the cases and examples her supervisor cited as support for her unacceptable performance.  PFR File, Tab 5 at 20-25.  Even if the agency's evidence regarding the errors the appellant committed during the OPS is contradicted by her own testimony, the agency's burden of proof in this matter is by substantial evidence, which is only that "degree of relevant evidence that a reasonable person, considering the record as a whole, might accept as adequate to support a conclusion, even though other reasonable persons might disagree."  5 C.F.R. § 1201.4(p).  Thus, as the administrative judge correctly found, to meet its burden, the agency is not required to provide evidence that is more persuasive than that presented by the appellant.  ID at 27; *see, e.g.*, *Leonard v. Department of Defense*, 82 M.S.P.R. 597, ¶ 5 (1999).

¶21     Finally, the appellant argues that the initial decision failed to meet the requirements of *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980), in which the Board stated that an initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of

credibility, and include the administrative judge's legal reasoning and conclusions of law. PFR File, Tab 10 at 23-24. We disagree. *See Spithaler*, 1 M.S.P.R. at 589.[14] We find that the appellant's arguments on review constitute mere disagreement with the administrative judge's explained findings on the issues, and we see no reason to reweigh the evidence or substitute our assessment of the record evidence for that of the administrative judge in this appeal. *See Crosby*, 74 M.S.P.R. at 105-06; *Broughton*, 33 M.S.P.R. at 359.

<u>The administrative judge correctly found that the appellant failed to prove her affirmative defense of retaliation.</u>

¶22      If the action is supported by substantial evidence, the Board will sustain it unless the appellant shows by a preponderance of the evidence[15] that (1) the agency committed harmful procedural error in reaching its decision, (2) the decision was based on a prohibited personnel practice under 5 U.S.C. § 2302(b), or (3) the decision was not in accordance with law. 5 U.S.C. § 7701(c)(2); 5 C.F.R. § 1201.56(c).

¶23      The appellant contends that the agency removed her in retaliation for her protected EEO activity, which is a prohibited personnel practice under 5 U.S.C. § 2302(b). After the issuance of the initial decision in this matter, the Board issued *Savage*, 122 M.S.P.R. 612, ¶¶ 35-51, clarifying the standards and procedures governing its adjudication of claims under Title VII of the Civil Rights Act of 1964 (codified in pertinent part at 42 U.S.C. § 2000e-16), including, but not limited to, retaliation. The Board explained that, when an appellant asserts an affirmative defense of discrimination or retaliation under

---

[14] The appellant cites to *Cranwill v. Department of Veterans Affairs*, 52 M.S.P.R. 610, 616-17 (1992), in which the Board found that the administrative judge's failure to summarize the relevant evidence made it impossible to analyze whether the agency proved its case by substantial evidence. PFR File, Tab 10 at 23. Here, in contrast, we find that the record supports the administrative judge's factual findings.

[15] A preponderance of the evidence is that "degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue." 5 C.F.R. § 1201.4(q).

42 U.S.C. § 2000e-16, the Board first will inquire whether the appellant has shown by preponderant evidence that the prohibited consideration was a motivating factor in the contested personnel action. *Savage*, 122 M.S.P.R. 612, ¶ 51. Such a showing is sufficient to establish that the agency violated 42 U.S.C. § 2000e-16, thereby committing a prohibited personnel practice under 5 U.S.C. § 2302(b)(1). *Savage*, 122 M.S.P.R. 612, ¶ 51.

¶24      In making this showing, an appellant may rely on direct or circumstantial evidence. *Id.*, ¶¶ 42, 51. The Board described three general types of circumstantial evidence upon which an appellant could rely: (1) a "convincing mosaic" of discrimination or retaliation, i.e., suspicious timing, ambiguous oral or written statements, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory or retaliatory intent might be drawn; (2) comparator evidence; and (3) evidence that the agency's stated reason for its action is unworthy of belief, a mere pretext for discrimination or retaliation. *Id.*, ¶ 42.

¶25      If the appellant meets her burden, the Board will inquire whether the agency has shown by preponderant evidence that it still would have taken the contested action in the absence of the discriminatory or retaliatory motive. *Id.*, ¶ 51. If the Board finds that the agency has made that showing, then its violation of 42 U.S.C. § 2000e-16 will not require reversal of the action. *Id.*

¶26      Because the factual record is fully developed on the appellant's affirmative defense and we are not basing our finding on witness demeanor, we need not remand this claim for further adjudication. As set forth below, we find that applying the analytical framework in *Savage* does not change the result in this case as to the appellant's affirmative defense of EEO reprisal.

¶27      There is no dispute that the appellant participated in protected EEO activity, the appellant's supervisors were aware of her protected activity, and she was removed. ID at 28-29. As the administrative judge found, the appellant participated in the following EEO activity: (1) in 2007, she filed a grievance

regarding her nonselection for a senior case technician position, in which she named her second-level supervisor; (2) in 2008, she filed an EEO complaint, which she later amended to name her second-level supervisor; (3) on April 7, 2011, the appellant contacted an EEO counselor and subsequently, on or about July 21, 2011, filed a formal complaint of discrimination regarding management, including her first- and second-level supervisors, subjecting her to continuous monitoring and scrutiny of her work; and (4) in November 2011, she filed an EEO complaint regarding her 2011 performance rating and, subsequently, included her proposed removal. ID at 28-29; IAF, Tab 5, Vol. 7 at 20-25 of 167, Tab 31 at 7-8, 63-80; IAF, Tab 1 at 55-84.

¶28 The administrative judge found that there was no nexus between the appellant's removal and her prior EEO activity; rather, the appellant's placement on the PA and subsequent removal for unacceptable performance were solely the result of her longstanding performance deficiencies.[16] ID at 29-30. He reasoned that it was clear from the record that the appellant's supervisors believed that her performance needed improvement before she filed her 2011 EEO complaints,[17] the errors her supervisors identified in her work during the OPS were consistent with the errors identified before the improvement plans began, and also with the kind of performance issues the appellant's prior supervisors had noted. ID at 29. He credited testimony of the appellant's second-level supervisor that the appellant's performance problems became more obvious and extreme after eBP was initiated in 2009. ID at 26. He also noted that a different supervisor indicated on the appellant's 2010 performance appraisal that she was "barely

---

[16] We interpret the administrative judge's finding that "the appellant has not in any fashion established a genuine nexus," ID at 29, as the same as a finding that the appellant failed to meet her burden to prove that her protected activity was a "motivating factor" in her removal. *See Savage*, 122 M.S.P.R. 612, ¶ 41.

[17] Indeed, both of the appellant's 2011 EEO complaints relate to actions taken by her supervisor to address her performance problems. IAF, Tab 5, Vol. 7 at 23-25, 163-64 of 167; Tab 5, Vol. 5, Subtab 4; Tab 31 at 7-8.

meeting the requirements" of one critical element and that adjusting to changes in work assignments and priorities was an area that needed improvement. *Id.* The record supports a conclusion that the appellant's performance deficiencies had been noted for years and that her supervisors began taking progressive action prior to her 2011 EEO complaints. IAF, Tab 48 at 13-55. Further, the appellant acknowledges that, upon her first-level supervisor's transfer to the office in December 2010, he immediately began addressing her performance deficiencies and later placed her on an informal pre-PA beginning March 25, 2011, prior to her initiating her 2011 EEO complaints.[18] PFR File, Tab 10 at 28.

¶29     On review, the appellant asserts that the administrative judge erred in his analysis by failing to consider her EEO activity in 2007 and 2008. PFR File, Tab 10 at 33-34. However, it is undisputed that the appellant's first-level supervisor, who placed her on the PA and OPS and proposed her removal, did not transfer to the office until December 2010, and was not involved or named in either the 2007 grievance or 2008 EEO complaint. ID at 10. The administrative judge credited the appellant's first-level supervisor's testimony regarding the reasons why he placed the appellant on the performance plans. *Id.* Moreover, the appellant's first-level supervisor testified that no one in management ever suggested or advised that he place the appellant on a performance plan or propose her removal; rather, he did so independently based on his assessment of her work performance. HT, Vol. 2 at 301. Therefore, we find that the appellant has not shown by preponderant evidence that her prior EEO activity was a motivating factor in the contested personnel action.

¶30     Accordingly, we affirm the administrative judge's initial decision sustaining the appellant's removal for unacceptable performance under chapter 43.

---

[18] As discussed, the administrative judge found unavailing the appellant's argument that her first-level supervisor was transferred to the office for the purpose of firing her. ID at 10.

**NOTICE TO THE APPELLANT REGARDING
YOUR FURTHER REVIEW RIGHTS**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request further review of this final decision.

Discrimination Claims:  Administrative Review

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  Title 5 of the United States Code, section 7702(b)(1)  (5 U.S.C. § 7702(b)(1)).   If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate U.S. district court. *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court

no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.